168 P.2d 100

**HAMPTON et al. v. PRIDDY et al.**

No. 4892.

Supreme Court of New Mexico.

April 10, 1946.

See also 49 N.M. 1, 154 P.2d 839.

R. A. Prentice, of Tucumcari, for appellants.

J. V. Gallegos and C. C. Davidson, both of Tucumcari, and H. A. Kiker, of Santa Fe, for appellees.

LUJAN, Justice.

This is an appeal from a judgment entered in separate contest proceedings initiated in the district court of Quay County by the appellants, T. W. Hampton and Clarence Massey, as contestants, involving the offices of Mayor and Councilman of the City of Tucumcari, following the municipal election held on the 4th

day of April, 1944. Hampton was nominated for Mayor and Massey for Councilman from the 2nd Ward on the Democratic ticket. The contestees in the contest, initiated as aforesaid, were appellee, Henry R. Priddy, nominated for the office of Mayor and Clarence E. Gamble, nominated for Councilman from the 2nd Ward, on the "Greater Tucumcari Ticket." The result of the election according to the initial canvass was as follows:

| Mayor | | Councilman | |
|---|---|---|---|
| Hampton | 721 | Massey | 685 |
| Priddy | 724 | Gamble | 701 |

Certificates of election were duly issued to Priddy for Mayor and Gamble for Councilman based on the foregoing canvass. A subsequent recount as to these offices resulted in no substantial, certainly no material, change in the result. It showed:

| Mayor | | Councilman | |
|---|---|---|---|
| Hampton | 718 | Massey | 680 |
| Priddy | 723 | Gamble | 700 |

The results of the recount come into the case before us solely as an admission of opposing counsel and not by reason of any evidence introduced at the trial. The contests were consolidated for trial below and after hearing the court awarded judgment in favor of the appellee Priddy for the office of Mayor and in favor of the appellee Gamble for the office of Councilman from the 2nd Ward, both nominees on the "Greater Tucumcari Ticket." These awards were contained in a single judgment. The appellants, who were the contestants below, prosecute this appeal, each complaining of the judgment so entered against him and they pray for a reversal thereof. While some thirteen separate errors are assigned, they are grouped for purposes of argument under two points, viz., (1) that the so called "Greater Tucumcari Party" was not a political party within the meaning of the governing statute and, hence, appellees' names, as its nominees, were not entitled to be printed on the ballot, nor should any votes cast for them have been counted, canvassed or returned, and (2) that at the date of said election, the appellee Clarence E. Gamble was not a resident of, but resided outside, the City of Tucumcari and, hence, was ineligible to be nominated and elected or to receive a certificate of election to the office of Councilman from the 2nd Ward in said City and that for the same reason the votes cast by him and his wife and three other named persons, all for contestees, were illegal and should not have been cast, counted or canvassed.

The ruling of the trial court on appellants' first point was made in acting on certain proposed findings of fact, one of which, at least, partakes more of the nature of a conclusion of law than a finding of fact. The proposals first made a declaration that "The Greater Tucumcari Party" was not a political party receiving more than fifteen per cent. of the total number of votes cast for the candidates for Governor in the last preceding election.

Then appeared a proposed finding in substance that the appellees were not nominated at or by a legally called and held political convention, and that the "Greater Tucumcari Political Party" had never filed in the office of the County Clerk of Quay County the rules governing the organization of said party, particularly with reference to the method of selecting nominees as candidates for public office.

Counsel for appellants first call to our attention 1941 Comp. Sec. 14-1303, L. 1884, c. 39, Sec. 55, the material portion of which reads:

" * * * And all elections for municipal officers shall in all respects be held and conducted in the manner prescribed by law in cases of county elections."

Attention is then directed to 1941 Comp. Sec. 56-720, L. 1927, c. 41, Sec. 720, the election code of 1927, which, while expressly excepting certain elections, including municipal, from the act, provides, nevertheless, that in all municipal elections, the duties specified in said act as devolving upon the county clerk shall devolve upon the clerk of the municipality unless otherwise specifically provided. Finally, under this point, the method of nominating candidates by convention system as set out in Article 9 of Chapter 56, New Mexico Statutes Annotated (1941)—Sections 56-901 to 56-908 of 1941 Compilation—is pointed out as the method which should have been pursued by the "Greater Tucumcari Party" in order to get the names of its candidates on the ballot, since it was not a political party whose candidates received as many as fifteen per centum of the total number of votes cast for the candidates for Governor in the last general election by all political parties, whose nomination is provided for by the primary election laws of this state. See 1941 Comp. Sec. 56-908. The several omissions to comply with the provisions of this article, such as failure to file with the county clerk the rules governing the organization of the party as required by 1941 Comp. Sec. 56-903, and in other respects, are pointed out by appellants (contestants) and it is argued the names of appellees were wrongfully on the ballot and, hence, no ballots cast for them were entitled to be counted or canvassed.

The appellees argue with a vigor equalling that of appellants that the statute invoked is obviously inapplicable to municipal elections, reminding us that the provisions of 1941 Comp. Sec. 14-1303 rendering applicable to municipal elections the general election laws of the state, speaks of the manner of "holding and conducting elections," not the manner of nominating candidates. They mention arguendo, also, the fact that if counsel for appellants be correct in their contentions in this behalf—nominations by political parties—then throughout the years there have been few officers, other than de facto, in many municipalities in the state, since in most of them non-partisan rather than party tickets have been the rule and not an exception to the rule.

▪ We are disposed to hold with appellees that the provisions of 1941 Comp. Secs. 56-901 to 56-908, L.1935, c. 58, are without application to a non-partisan ticket offered to the electors in a municipal election. Obviously as its whole context connotes, the act was never intended to discourage or apply to the long existing and salutary practice of offering non-partisan tickets in city, town and village elections. If in doubt about the matter, the heavy penalty imposed for non-compliance with its provisions would incline us to resolve the doubt against an application of the act which would discourage, if not prohibit, local non-partisan tickets. Section 6 of the Act, 1941 Comp. Sec. 56-906, reads:

"Any ballot containing the name or names of any candidate or candidates of any political party which has failed to comply with the provisions of this act shall not be cast, counted, canvassed or returned. (Laws 1935, ch. 58, § 6, p. 107.)"

This is contrary to the effect almost universally applied in such circumstances, 18 Am.Jur. 263, Sec. 131, under "Elections" and case note in 7 Ann.Cas. 839.

The legislature in enacting L.1935, c. 58, certainly gave the act no specific application to municipal elections. We do not feel disposed to do so by construction when the practical effect of, so doing would be to outlaw non-partisan tickets in such elections. The statute relied on being without application to a municipal election, the appellants' first point must fail.

The second claim of error relied on relates to the residence of Clarence E. Gamble, one of the appellees, and that of four other persons, all of whom are claimed to have voted and had their votes counted for the said Gamble for Councilman and Henry R. Priddy for Mayor. The argument is that the land on which Gamble and the four other questioned voters resided lay outside the corporate limits of the City of Tucumcari, thus denying to Gamble the right to hold a municipal office therein and to him and four other persons named, any right to vote at a municipal election in said city.

The method by which appellants sought to meet the burden, clearly theirs, of establishing residence outside the city of contestee Gamble, and the other four persons and, hence, the illegality of the votes of all of them, as well as Gamble's ineligibility to hold the office of Councilman, was to introduce a plat bearing date, January 14, 1902, of the original town of Tucumcari showing the dedication of certain described congressional subdivisions, followed by a record of certain proceedings before the Board of County Commissioners of the County of Quay, in the Territory of New Mexico, on July 10, 1906, incorporating the Town of Tucumcari, embracing the lands shown on the above mentioned plat along with other lands. There was then introduced evidence showing the residence of the five questioned voters to be on described

lands other than those embraced in the incorporation proceedings aforesaid and evidence in the nature of an admission by Gamble in the form of tax returns that the land on which he lived was not within the outboundaries of the area included in the incorporated lands. Testimony to same effect in relation to places of residence of the four other persons whose votes were questioned was also brought out.

There followed the testimony of various persons, the tendency of which was to show that the owners of the three tracts of land on which the five persons named lived on election day, April 4, 1944, had never been dedicated by them and that without a dedication, such tracts could not have been incorporated into the City of Tucumcari after July 10, 1906. Consequently, the residents on such land were not legal voters on the day of election. So runs the argument.

Touching this phase of the case, the trial court found:

"The Court further finds there is no evidence in the record to show the territorial extent of the City of Tucumcari.

"The Court further finds there is no evidence to show the out-boundaries of the City of Tucumcari."

The view entertained by the trial judge is reflected by the following comment at close of the trial, to-wit:

"The motion to dismiss will be granted by the Court for the reason that I don't believe there is sufficient evidence to show that any of the contested votes were cast illegally because there is no evidence, as far as I can determine, to justify the Court in determining where the city limits of the City of Tucumcari extend to. The fact that there are certain annexation records introduced to indicate the limits of the City of Tucumcari in the year 1902 or 1906 is no help to the Court in determining where they are at the present time. There unquestionably have been many additions to the City of Tucumcari. And, further, it is very probable that the city limits extend considerably beyond the original dedication or plat of 1902.

"I believe the burden is on the Contestants to establish by a reasonable amount of evidence where the limits of the city are, and not place the Court in position of having to guess whether or not the contested voters lived inside or outside of the city limits."

Other means of annexing territory to a municipality than through dedication by the owner are recognized and have statutory sanction. See 1941 Comp. Sec. 14-601, Sec. 14-602 and Sec. 14-606. The evidence fails to show that one or the other of these means was not followed. The most that can be said of appellants' evidence on this issue is that it affords strong proof the land on which the questioned voters resided had not been annexed to the city by voluntary dedication. It does not exclude other recognized means of annexing territory to a municipality.

The questioned voters were all registered as voters within the city and had voted in previous city elections. The appellee Gamble had served on the city council for eight years immediately preceding the election in April, 1944. These important considerations were not to be ignored and the electors disfranchised save by proof which clearly established illegality of their votes. We are unable to say the trial court erroneously ruled on this issue.

Finding no error, the judgment of the trial court will be affirmed.

It is so ordered.

MABRY, C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.

HUDSPETH, J., did not participate.